IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REBEKAH FLOYD, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:18-cv-2247-K |
| | § | |
| KELLY SERVICES, INC., | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant's "Motion to Dismiss and Compel Individual Arbitration." ECF No. 12. For the reasons stated, the Court should GRANT the Motion and DISMISS this civil action without prejudice to Plaintiff's right to demand arbitration of her claims.

**Background**

Defendant Kelly Services, Inc. (Kelly) is an office and workforce solutions staffing company. Compl. 3 (ECF No. 1). On October 2, 2017, Kelly hired Plaintiff Rebekah Floyd as a temporary catastrophe property claims adjuster for AON Insurance. *Id.* Though Plaintiff performed work for AON, Kelly employed and paid Plaintiff from approximately October 2, 2017, to December 10, 2017. *Id.* On August 24, 2018, Plaintiff filed her Complaint asserting claims against Kelly under the Fair Labor Standards Act ("FLSA"). *Id.* 1. Plaintiff's Complaint avers that it is "[a] collective action lawsuit on behalf of [Plaintiff] and all other similarly situated employees to recover unpaid regular and overtime wages from Defendant Kelly

1

Services, Inc." *Id.* Kelly moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(3) and to compel Plaintiff to arbitrate her claims individually, pursuant to an Arbitration Agreement between the parties. *See* Mot. The Motion is fully briefed and ripe for determination.

## Legal Standards and Analysis

### 12(b)(3)

Kelly moves to dismiss Plaintiff's Complaint and compel arbitration under Rule 12(b)(3). Under Rule 12(b)(3), claims may be dismissed for improper venue. Fed. R. Civ. P. 12(b)(3). "The United States Supreme Court has described an arbitration agreement as a 'specialized kind of forum-selection clause.'" *Wheeler v. Dollar Tree Stores, Inc.*, 2017 WL 3426300, at *2 (W.D. La. Aug. 8, 2017) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.")). Thus, the enforceability of an arbitration agreement may be analyzed under Rule 12(b)(3). *Id.*; *see also McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 430 n.5 (5th Cir. 2019) (acknowledging that while the Fifth Circuit has not decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper vehicle for a motion to dismiss based on an arbitration clause, it has accepted Rule 12(b)(3) as a proper method for seeking dismissal in favor or arbitration) (citing *Noble Drilling Servs., Inc. v. Certex USA,*

2

*Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010); *Lim v. Offshore Specialty Fabricators, Inc.,* 404 F.3d 898, 902 (5th Cir. 2005)).

The Fifth Circuit has not ruled on which party bears the burden on a Rule 12(b)(3) motion, but "most district courts within this circuit have imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum." *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 605 (N.D. Tex. 2017) (citing cases); *see also Victory Renewables, LLC v. Energy Trading Co.*, 2019 WL 2539209, at *3 (N.D. Tex. Feb. 8, 2019), *adopted by* 2019 WL 2540738 (N.D. Tex. Mar. 6, 2019). When deciding a Rule 12(b)(3) motion, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted). The court may consider evidence in the record beyond the facts alleged in the complaint and its proper attachments. *Ambraco, Inc. v. Bossclip B.V.,* 570 F.3d 233, 238 (5th Cir. 2009) (citations and internal quotation marks omitted) ("[T]he court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). "Absent an evidentiary hearing on a Rule 12(b)(3) motion, affidavits and other evidence submitted by the non-moving party are viewed in the light most favorable to that party." *Mem'l Hermann Health*

*Sys. v. Blue Cross Blue Shield of Tex.*, 2017 WL 5593523, at *4 (S.D. Tex. Nov. 17, 2017) (citing *Ambraco*, 570 F.3d at 238).

## The Federal Arbitration Act

The agreement at issue in this case expressly states: "This Agreement shall be governed by the Federal Arbitration Act." Def.'s App. 7 (ECF No. 14-1). The Federal Arbitration Act (FAA) codifies a national policy favoring arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)); *see also Mun. Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338, 342 (5th Cir. 1986) (citing *Southland Corp. v. Keating*, 465 U.S. 1 (1984)). Under § 2 of the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr.*, 561 U.S. at 67. It "places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms." *Id.* (internal citations omitted). Under § 4 of the FAA, parties aggrieved by another party's failure to arbitrate a claim pursuant to a written arbitration agreement "may petition a federal court 'for an order directing that such arbitration proceed in a manner provided for in such agreement.'" *Id.* at 68 (quoting 9 U.S.C. § 4). Once the court

4

is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," it "'shall' order arbitration." *Id.* (quoting 9. U.S.C. § 4).

"Courts perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). The court must first determine "'whether the parties agreed to arbitrate the dispute,'" and second, the court must determine "'whether any federal statue or policy renders the claims nonarbitrable.'" *Id.* (quoting *R.M. Perez & Assocs., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir. 1992)). The first inquiry involves answering two questions: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quoting *Am. Heritage Life Ins. Co. v. Lang,* 321 F.3d 533, 538 (5th Cir. 2003)) (internal quotation marks omitted). "'Although there is a strong federal policy favoring arbitration, [that policy] does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Moran v. Ceiling Fans Direct, Inc.*, 239 F. App'x 931, 936 (5th Cir. 2007) (per curiam) (quoting *Will-Drill Res.,* 352 F.3d at 214). However, when an arbitration agreement contains a delegation clause "giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). If the party seeking arbitration points to a purported delegation clause, then the court analyzes

whether a valid agreement exists; if it finds a valid agreement exists, "the only question . . . is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* at 202 (citing *Rent-A-Ctr.*, 561 U.S. at 68-69). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.*[1]

When "a dispute is subject to mandatory . . . arbitration procedures, . . . the proper course of action is usually to stay the proceedings pending arbitration." *Ruiz v. Donahoe*, 784 F.3d 247, 249 (5th Cir. 2015) (citing 9 U.S.C. § 3; *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 658-59, 662 (5th Cir. 1995)). "However, a dismissal may be appropriate 'when *all* of the issues raised in the district court must be submitted to arbitration.'" *Id.* at 249-50 (emphasis in original) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); citing *Adam Techs. Int'l S.A. de C.V. v. Sutherland Global Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013)).

## I.

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law

---

[1] In *Kubala*, the court noted that it "carved out a narrow exception to the *Rent-A-Center* rule: Where the argument for arbitration is 'wholly groundless,' [it] refuse[s] to enforce a delegation clause." *Kubala*, 830 F.3d at 202 n.1 (citing *Douglas v. Regions Bank*, 757 F.3d 460, 464 (5th Cir. 2014)). The Supreme Court, however, recently overruled *Douglas*. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528-29 (2019) ("The question presented in this case is whether the 'wholly groundless' exception is consistent with the Federal Arbitration Act. We conclude that it is not.").

principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. "Under Texas law[2], a binding contract requires: '(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.'" *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012)). "'The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." *In re Capco Energy*, 669 F.3d at 280 (quoting *Copeland v. Alsobrook,* 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)). Additionally, a valid contract requires consideration. *Id.* And Texas law recognizes the legal effect of electronic signatures. Tex. Bus. & Com. Code § 322.007(a) ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.").

Therefore, to determine whether an offer, an acceptance, and a meeting of the minds took place, the Court looks to "what the parties said and did." Kelly

---

[2] The Arbitration Agreement indicates that Michigan law should be applied to disputes arising from Plaintiff's employment relationship with Kelly. Def.'s App. 7. However, the Court does not analyze the underlying employment dispute, only the existence of an agreement to arbitrate. The parties agree that Texas law governs whether a valid arbitration agreement exists. *See* Def.'s Br. Support; Pl.'s Resp. (ECF No. 15); *Kubala*, 830 F.3d at 202 ("Whether they entered a valid arbitration contract turns on state contract law. They agree that Texas contract law governs." (internal citation omitted)); *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018) (same).

offered Plaintiff paid employment, and Plaintiff indicated her acceptance of Kelly's offer, and consent to its terms, by completing Kelly's "eRegistration electronic onboarding process" on September 24, 2017, at 5:59 p.m. before starting work for Kelly on "or about October 2, 2017." Def.'s App. 1, 5; Compl. 1. As part of that process, Kelly requires "every new applicant for employment as a Kelly temporary employee[3] . . . to sign an arbitration agreement as a condition of employment"; this has been Kelly's practice since November 2014. Def.'s App. 2. To successfully complete the eRegistration process and submit an application to Kelly, an applicant must accept and sign each document, including the Arbitration Agreement. *Id.* 3. "[Plaintiff] reviewed and completed each form individually as part of the eRegistration standard process . . . and applied an electronic signature to each . . . document[ ]." *Id.* 4. Kelly's business records indicate that Plaintiff acknowledged the Arbitration Agreement at 5:44 p.m. on September 24, 2017, specifically affirming "that [she] . . . carefully read [the] Agreement, that [she] underst[ood] its terms, and that [she] . . . entered into the Agreement voluntarily and not in reliance on any promises or other representations by Kelly Services." *Id.* 5, 8.

Plaintiff then electronically signed the Arbitration Agreement on September 24, 2017, at 5:44 p.m., wherein the parties "agree[d] to use binding arbitration for any 'Covered Claims' that arise between [them]." *Id.* 5, 8. The Arbitration

---

[3] Kelly "engaged Plaintiff on a temporary basis." Compl. 3.

Agreement defines "Covered Claims" as "all common-law and statutory claims relating to [Plaintiff's] employment, including, but not limited to, any claim for breach of contract, unpaid wages, wrongful termination, and for violation of laws forbidding discrimination, harassment, and retaliation." *Id.* 7. Accordingly, the Court finds that the parties' execution of the Arbitration Agreement as part of Plaintiff's employment registration materials constitutes a valid contract under Texas law.

Plaintiff contends, however, that she "has no knowledge of ever reviewing or executing" the Arbitration Agreement. Pl.'s Resp. 1. But she provides the Court with no evidence to support her position other than her own declaration. In Plaintiff's declaration, she states that though she "execute[d] the employment application to become a temporary insurance claims adjuster with Kelly Services, Inc., [she] was never presented with the 'dispute resolution and mutual agreement to binding arbitration'" and never signed such an agreement, electronically or otherwise. Pl.'s Decl. 1 (ECF No. 15-1). The Court construes, as it must, all factual conflicts in Plaintiff's favor, like the Court would if deciding a motion for summary judgment; however, Plaintiff may not use her own self-serving affidavit, with no other evidence, to create a fact question. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005) (citing *BMG Music v. Martinez,* 74 F.3d 87, 91 (5th Cir. 1996) (affirming summary judgment for plaintiffs where "the only evidence in support of the defendants' theory is a conclusory, self-serving statement by the defendant"); *United States v. Lawrence,* 276 F.3d 193, 197 (5th Cir. 2001)

(affirming summary judgment for plaintiff where defendant's only evidence consisted of "self-serving allegations," which "are not the type of significant probative evidence required to defeat summary judgment" (internal quotation marks and citation omitted)) ("[The non-moving party's] attempt to create a fact issue as to [an element of the relevant statute] by relying on a conclusory and self-serving affidavit is on unsteady ground."). Here, the evidence indicates that to complete the eRegistration process, an applicant must enter her unique user ID and password, which Kelly sends to the applicant's email address. Def.'s App. 2. Once logged in, the applicant must enter her social security number and is unable to proceed past that screen until she does so. *Id.* Thus, if someone other than Plaintiff completed the eRegistration process on her behalf, that person would have required Plaintiff's personal identifying information. Plaintiff, however, does not contend that someone else completed the eRegistration process for her fraudulently. She admits that she executed the employment application; she only disputes her signature on the Arbitration Agreement. Pl.'s Decl. 1. But "an applicant cannot submit an application through eRegistration without reviewing and acknowledging each of the documents, including the Arbitration Agreement." Def.'s App. 3. Applicants must "accept and sign" each document, including the Arbitration Agreement, and Kelly has required applicants to sign the Arbitration Agreement as part of its registration materials and as a condition of employment since 2014. *Id.* 2-3. No evidence suggests Kelly deviated from this practice here,

other than Plaintiff's own declaration that she was never presented with such a form.

Other district courts have been unwilling to rely solely on a plaintiff's declaration contesting the validity of an arbitration agreement in determining whether an arbitration agreement existed between the parties. *See, e.g.*, *Wheeler*, 2017 WL 3426300, at *3-4. In *Wheeler*, Dollar Tree contended that Wheeler electronically signed a "'Mutual Agreement to Arbitrate Claims'" on December 8, 2015, and that it must have been her electronic signature because she could not have gained access to the agreement without entering her password. *Id.* at *3. Wheeler submitted her own affidavit stating that she was not employed by Dollar Tree on December 8, 2015, and that she did not sign an arbitration agreement relating to her employment with Dollar Tree. *Id.* Because the court was required to view the facts in the light most favorable to Wheeler, the plaintiff, and the court would have been "constrained to find that there [was] no valid arbitration agreement between the parties," the court ordered limited discovery on: "the dates on which the plaintiff was employed by the defendant; the process for affixing an electronic signature on an arbitration agreement between the defendant and its employees; how an electronic signature on an arbitration agreement between the defendant and one of its employees is verified and authenticated; and the existence of any and all arbitration agreements between the plaintiff and the defendant." *Id.* at *3-4. This Court need not grant similar limited discovery here because Kelly has already provided information regarding all of the topics the *Wheeler* court

designated. Further, Plaintiff's employment dates are not disputed; Plaintiff admits that she worked for Kelly and completed the eRegistration process in anticipation of her employment.

Nonetheless, even if Plaintiff had not expressly agreed to the Arbitration Agreement, she accepted it by working for Kelly. "[A]cceptance need not be anything more complicated than continuing to show up for the job and accept wages in return for work." *Kubala*, 830 F.3d at 203. Under Texas law, when an "'employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law.'" *Id.* (quoting *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986)). In Plaintiff's case, Kelly did not modify the Arbitration Agreement after she began working; rather, executing the Arbitration Agreement, together with the other eRegistration forms, was a precondition for employment. Therefore, even if Plaintiff did not sign the Arbitration Agreement, by starting work for Kelly, she indicated her acceptance of its employment terms. Accordingly, the Court finds that the parties had a valid agreement to arbitrate.

## II.

The Arbitration Agreement contains a valid delegation clause. The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable evidence." *Henry Schein,* 139 S. Ct. at 530 (citing *First Options,* 514

U.S. at 944; *Rent–A–Center,* 561 U.S. at 69 n.1). When the parties' contract does so, "a court possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 529. The Fifth Circuit holds that the express adoption of the AAA Rules, which state that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,* 687 F.3d 671, 675 (5th Cir. 2012) (citing cases from the First, Second, Eighth, Eleventh, and Federal Circuits in agreement); *accord Arnold v. Homeaway, Inc.,* 890 F.3d 546, 552 (5th Cir. 2018).

Here, the parties' Arbitration Agreement specifically provides: "The employment dispute resolution rules of the American Arbitration Association ('AAA') effective at the time of filing will apply, a copy of which is available on MyKelly.com or upon request from your Kelly Representative." Def.'s App. 7. Plaintiff argues that the Arbitration Agreement's language does not clearly and unmistakably incorporate the AAA Rules. Pl.'s Resp. 6. However, the Fifth Circuit's holding that incorporation of the AAA Rules constitutes clear and unmistakable evidence of the parties' agreement to delegate arbitrability and the text of the Arbitration Agreement incorporating the AAA Rules are clear. Accordingly, the

Court finds that the parties delegated threshold arbitrability questions to the arbitrator by clear and unmistakable evidence.

Because the parties' executed a valid arbitration agreement and have delegated threshold questions of arbitrability to the arbitrator, the District Court should grant Defendant Kelly's 12(b)(3) Motion to Dismiss and Compel Individual Arbitration. While "the proper course of action is usually to stay the proceedings [in a case subject to mandatory arbitration] pending arbitration," dismissal is appropriate when all of a plaintiff's claims must be submitted to arbitration. *Ruiz*, 784 F.3d at 249. Though the arbitrability question is reserved for the arbitrator, the parties' Arbitration Agreement provides that "all common-law and statutory claims relating to [Plaintiff's] employment" are subject to arbitration. Def.'s App. 7. Plaintiff's Complaint brings claims under the Fair Labor Standards Act, relating to her employment. Compl. 1. Thus, the Court should dismiss Plaintiff's claims and not stay this case.

Last, Defendant's request that the Court compel Plaintiff to arbitrate her claims individually is proper. In her Complaint, Plaintiff brings a "collective action under section 16(b) of the FLSA on behalf of herself and all other similarly situated employees." Compl. 2. However, the Arbitration Agreement provides, "Arbitration under this Agreement shall be on an individual basis." Def.'s App. 7. "Congress has instructed that arbitration agreements . . . must be enforced as written." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (upholding the employees' arbitration agreements requiring individualized arbitration proceedings instead of class or

collective ones). Therefore, the District Court should grant Defendant Kelly's 12(b)(3) Motion to Dismiss and Compel Individual Arbitration.

## RECOMMENDATION

For the foregoing reasons, the Court should GRANT Defendant's Rule 12(b)(3) Motion to Dismiss (ECF No. 12) and DISMISS her this action without prejudice to Plaintiff's right to demand arbitration of her claims on an individual basis.

**SO RECOMMENDED.**

August 30, 2019.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).